CULPEPPER, Judge.
This is a workmen’s compensation case. The district judge awarded plaintiff, Percy Mire, benefits for total and permanent disability, as well as attorney’s fees in the sum of $2,000. The defendants appealed. Plaintiff answered the appeal seeking an increase in the attorney’s fees and penalties of 12% on the award for medical expense, the latter apparently omitted from the judgment by oversight.
The substantial issues are: (1) The occurrence of a compensable accident; (2) The extent and duration of plaintiff’s disability and; (3) Penalties and attorney’s fees.
The general facts show that plaintiff, 47 years of age, had worked for several years as a laborer for Grigsby Brothers, Inc., who were engaged in the business of sandblasting and coating drilling pipe in the city of New Iberia. Plaintiff contends that on about January 21, 1965 he and three fellow workers, Alibe Prejean, Justin Venable and Irving Hebert, were unloading heavy drill pipe when a piece slipped off a rack and struck his right foot, fie did not immediately report the accident because he was a “poor man who needed the money”. He continued to work the next few days because he was assigned to lighter work painting a boat. However, on February 11, *364 1965, he and a crew of men were assigned the task of unloading 100 pound sacks of sand from a boxcar and carrying them into a warehouse. Plaintiff says this heavy work caused his injured foot to swell and become very painful. He worked a few hours the next day and has not worked since.
Plaintiff testified that hís foot became progressively worse. On February 17, 1965 he telephoned Mr. Grigsby, president and general manager of the defendant corporation, and related the accidents of January -21 and February 11. He wanted to know what company doctor to see. Mr. Grigsby •authorized him to see Dr. Sidney Hernán-. dez, a general practitioner in Duson, who was also plaintiff’s family doctor. Grigsby ^testified that immediately after this he checked with his plant manager and plant foreman, but neither had any knowledge of plaintiff’s alleged accidents.
Dr. Hernandez saw plaintiff on February 18, 1965 and diagnosed an injury to the ligaments ánd muscles of the right foot. On February 23, 1965 he saw plaintiff again and, finding no improvement, decided to refer plaintiff to Dr. William Zink, a surgeon in Lafayette who does considerable orthopedic practice. Dr. Plernandez apparently made no report to the defendants.
Dr. Zink first saw plaintiff on February 23, 1965. From the history and a clinical examination, together with x-rays which were reported negative for any fractures, Dr. Zink initially diagnosed a sprain with residual swelling and thought that the claimant was disabled, but would be able to return to work within a few weeks. These findings were reported to Grigsby Brothers, Inc. in a letter dated February 26, 1965.
Dr. Zink continued to see and treat plaintiff during March and April of 1965 and thought that his foot was improving. On April 20, 1965 Dr. Zink reported to the defendants that the plaintiff still had pain and loss of movement in the ankle, but that he was making a good recovery and should be able to return to work by the 1st of June, 1965.
During about the middle of April, plaintiff and his brother, Clyde Mire, became concerned that compensation payments were not yet being made. Clyde Mire phoned Grigsby Brothers and talked to Mr. Don Fritche, manager of the plant, who advised them to come to the office and fill out a form reporting the accident. Plaintiff and his brother went to the office and gave the secretary the information to fill out the form. Fritche contends that this incident, which occurred about the middle of April, 1965, was the first he knew of the alleged accident. He says he asked everybody who was still working in the plant and no one knew of either the pipe accident on January 21 or the sand bag incident on February 11. Hence, compensation payments were not initiated.
On April 23, 1965 plaintiff employed an attorney who wrote a letter, received by Grigsby Brothers on April 26, 1965, demanding workmen’s compensation. Receiving no response, this suit was filed on May 11, 1965. Within a few days thereafter the adjuster for the defendant insurer learned the names of the three employees who were working with plaintiff at the time the pipe fell on his foot and secured statements from them. In these statements Alibe Prejean said he actually saw the pipe strike the plaintiff’s foot; Justin Venable moved the pipe off the plaintiff’s foot; and Irving Hebert saw plaintiff limping soon thereafter and was told by plaintiff that a piece of pipe had struck his foot. But, defendants contend this still left a reasonable doubt as to the accident because Prejean is plaintiff’s brother-in-law and the other two are plaintiff’s neighbors and close friends.
Defendants filed an answer on June 4, 1965 denying the accident and any disability. The case was tried on November 3, 1965.
*365 The first issue is the occurrence of a compensable accident. There is clearly sufficient evidence to support the finding of the trial judge on this factual issue. Plaintiff and his three fellow employees gave direct testimony as to the occurrence on January 21, 1965 when the pipe fell on plaintiff’s foot. Of course, plaintiff should have reported the accident, but his explanation that he needed the wages and performed lighter duties painting a boat for the next few days is reasonable. Plaintiff’s testimony as to the aggravation of his foot injury on February 11, 1965 while carrying heavy sacks of sand is corroborated by the testimony of Irving Hebert who said plaintiff complained to him of his foot hurting on that occasion. Plaintiff’s wife testified that her husband complained of foot pain beginning in January. Plaintiff’s phone call to Mr. Grigsby on February 17, 1965 and the history which plaintiff gave to Dr. Hernandez and Dr. Zink describing the accidents of January 21 and February 11, corroborate plaintiff’s contentions.
The next issue is disability. As stated above, Dr. Hernandez saw plaintiff on February 18 and again on February 23. When plaintiff’s condition did not improve, he referred him to Dr. Zink in Lafayette. Dr. Zink saw and treated plaintiff, for what he diagnosed as a sprain, until May of 1965 and, all during that time, was of the opinion plaintiff was disabled.
Apparently being dissatisfied with Dr. Zink’s treatment, plaintiff then went to Dr. J. W. Faulk, Jr., a general practitioner of Crowley. Dr. Faulk requested additional x-rays from a radiologist, Dr. Wallace M. McBride. This radiologist reported his films of May 14, 1965 showed marked irregularities of the foot joints secondary to trauma. Based largely on this report, Dr. Faulk then diagnosed traumatic arthritis from which condition he was of the opinion plaintiff was still disabled as of the date of Dr. Faulk’s deposition on October 15, 1965.
On the request of plaintiff’s own attorney he was also examined by Dr. James Gilly, an orthopedic surgeon of Lafayette, on May 5, 1965. Dr. Gilly’s report was negative for any disability related to the accident. He did express an opinion that plaintiff’s complaints could be from a skin disease, psoriasis.
Plaintiff was also examined by Dr. Homer Kirgis, a neurosurgeon in Oschner’s Clinic in New Orleans, on September 9, 1965. Dr. Kirgis found no neurological abnormalities and was of the opinion that plaintiff was able to return to work.
The lay testimony supports plaintiff. He has worked as a common laborer for many years and worked regularly up until the accidents but since then has limped and is unable to work.
Summarizing, we think there is sufficient evidence to support the decision of the trial judge finding total and permanent disability. The testimony of Dr. Hernandez, Dr. Zink, Dr. Faulk, Dr. McBride and the lay witnesses preponderates over that of Dr. Gilly and Dr. Kirgis.
The final issue is penalties and attorney’s fees. The applicable statute provides that claims shall be paid “within 60 days after receipt of satisfactory proofs of loss”. If the failure to make such payment is “arbitrary, capricious, or without probable cause” penalties and attorney’s fees shall also be paid. LSA-R.S. 22:658. Jurisprudence has established that the 60-day delay between the demand and the suit is deemed waived when the defendant answers denying all liability, since then the demand and the delay are useless formalities. Stagg v. New Amsterdam Casualty Company, 166 So.2d 82 (La.App.3rd Cir.1964) and cases cited therein.
In the present case, the defendants did file an answer denying the accident and any disability whatsoever. Hence, the 60-day delay for proof of loss and demand is *366 waived. The issue is whether defendants, as of the time they filed their answer on June 4, 1965, were arbitrary, capricious or without probable cause in denying and failing to pay any compensation benefits whatsoever.
Defendants had no grounds whatever to deny plaintiff’s disability until they received Dr. Gilly’s report on May 26, 1965. Up to that time the only medical reports defendant had received were those from Dr. Zink, who stated clearly that plaintiff was still recovering from a sprained foot. Even Dr. Gilly’s report did not question that plaintiff had sprained his foot and had been disabled for a period of time. Dr. Gilly just stated he thought plaintiff had recovered by the time of his examination on May 5, 1965. Hence, defendants were clearly arbitrary and without probable cause in denying any disability whatsoever.
The only possible defense to the payment of at least some benefits was the question of the accident. This may have been a reasonable defense up until the time suit was filed on May 11, 1965. But, within a few days after suit was filed the defendant insurer’s adjuster, apparently with no difficulty, located the three fellow employees, who were with the plaintiff when he was injured on January 21, 1965, and took their statements. After these statements were taken, there could have been no reasonable doubt that the accident occurred as plaintiff had been contending all along; as he had told Mr. Grigsby on February 17; as he had told Dr. Hernandez on February 18 and Dr. Zink on February 23; and as he reported to the office of Grigsby Brothers during the middle of April, 1965. Thus, defendants’ answer on June 4, 1965 denying the accident was arbitrary and without probable cause. By the time they filed their answer, there was no bona fide dispute as to the accident.
The defendant also makes an argument that after the report by Dr. Gilly, on May 26, 1965, there was a reasonable dispute as to plaintiff’s disability. We find no merit to this argument. As we stated above, even under Dr. Gilly’s .report, plaintiff was undoubtedly disabled for some period of time and the suit was necessary to enforce payment of benefits therefor which the defendant denied.
Plaintiff contends in this court, by answer to the appeal, that the attorney’s fee should be increased from $2,000 to $3,000. This is a matter largely within the discretion of the trial judge. We find no abuse of this discretion.
The plaintiff also points out that the lower, court judgment failed to award 12% penalties on the amount recovered for medical expense. This was apparently an oversight in the judgment. Plaintiff is entitled to a 12% penalty on the full amount of benefits awarded, including medical expense.
For the reasons assigned, the judgment appealed is amended to allow 12% penalties on any amount due for medical expense. Otherwise than as herein amended, the judgment is affirmed. All costs of appeal are assessed against the defendants.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.