FRUGE, Judge.
This is a workmen’s compensation proceeding in which the trial court awarded the plaintiffs penalties and attorney fees for defendants’ arbitrary and capricious refusal to pay compensation due the plaintiffs. Defendants appealed the assessment of penalties and attorney fees. Plaintiffs answered the appeal requesting $1,500.00 increase in attorney fees.
On July 27, 1968, Omar Dauzat in the course of his employment with defendant Pel State Oil Company, was murdered during an armed robbery. He was survived by his wife, Mrs. Betty Z. Dauzat, and three minor children.
Defendant, Allstate Insurance Company, had a contract of insurance with Pel State Oil Company covering Workmen’s Compensation claims of Pel State’s employees. On August 3, 1968, Pel State Oil Company received a demand for compensation benefits in a letter from plaintiffs’ attorney dated August 1, 1968. On January 6, 1969, plaintiffs received the initial payment from defendants which covered all compensation then due. The events that transpired between those two dates are to determine whether or not the trial court was justified in awarding plaintiffs the statutory penalty provided in La.R.S. 22:658 of 12 percent of payments 60 days overdue and attorney fees of $2,000.00.
Pel State Oil Company, through its employee, Lloyd Rosier, was aware of Dau-zat’s death at the time it happened. Rosier, Dauzat’s supervisor, also knew at that time that Dauzat was married and had three children. Allstate’s initial attempt to contact Mrs. Dauzat was on August 3, 1968, when Mr. Jack Wilkinson telephoned the plaintiff on defendants’ behalf but she was out and did not return his call. He called Plaintiff again on August 6, 1968, and was informed that she had employed Mr. Howard Nugent to handle the matter for her. Mr. Wilkinson called Mr. Nugent that same day and again on August 8, 9, and 30, before returning the file to Allstate on* September 6, 1968.
Meanwhile, on August 3, 1968, Pel State Oil Company received a letter dated Au *770 gust 1, 1968 from Mr. Howard N. Nugent, Jr., advising them that he represented Mrs. Dauzat in the matter and giving notice of her and the minor children’s claims.
On September 5, 1968, Mr. Joe Bourgeois, who had taken over the file from Mr. Wilkinson, called Mr. Nugent requesting the birth certificates of the children, the marriage license of Mr. and Mrs. Dauzat, and a family history. On September 10, Mr. Nugent gave Mr. Bourgeois the birth certificate personally and on September 27 sent a letter to Allstate Insurance Company with a copy of the marriage license and the family history.
On October 10, 1968, suit was filed on behalf of Mrs. Dauzat and the three minor children. Allstate retained Mr. Leo Gold, an Alexandria attorney, to defend the suit.
On October IS, Mr. Gold called Mr. Nu-gent asking for a delay. On October 21, Mr. Nugent received a letter from Mr. Gold confirming the delay and requesting the birth certificates of the children. Mr. Nugent responded to this letter by letter on October 24, advising Mr. Gold that birth certificates had already been given to Allstate. On the same day Mr. Nugent received a letter from Mr. Gold advising that Mr. Gold would “lay off” the case while Allstate negotiated with Mr. Nugent.
On October 31, 1968, Allstate withdrew its earlier instructions to defer action and the file was turned over to Mr. Jimmy Stoker, an attorney in Mr. Gold’s office. Mr. Stoker called Mr. Nugent on November 4 or 5, asking for assistance in the matter. He followed this up with a letter to Mr. Nugent on November 11, 1968, requesting proof of various aspects of the family history. On November 14, 1968, Mr. Nugent sent Mr. Stoker a letter pointing out that sources of the information sought were given to Allstate prior to filing suit in the form of certificates or the statement (family history) by Mrs. Dauzat. He also advised Mr. Stoker to file an answer and offered to help obtain relevant information not readily available from the indicated sources.
On December 2, 1968, Mr. Stoker advised Mr. Nugent by letter that he would like to take Mrs. Dauzat’s deposition on December 9, 1968, at 2:00 p. m. Mr. Nugent advised his client of this by letter of December 3, and her deposition was taken on December 9. On January 6, 1969, all compensation then due and owing including funeral benefits was paid.
Defendants contend that Mr. Nugent’s refusal to allow an interview with Mrs. Dauzat made it impossible to settle the claim because of a lack of information, and the long time period between July 27, 1968 and January 6, 1969, when compensation was paid, was required to adequately investigate the matter. The trial court was of the opinion that “Allstate Insurance Company devoted too much time and effort toward defeating this claim and not enough toward a factual investigation and proper resolution of its obligations under its policy of Workmen’s Compensation Insurance and the Workmen’s Compensation Law.”
It is apparent that Mr. Nugent declined to allow Allstate to interview his client. He preferred to supply Allstate with the needed information himself rather than let his client do it directly. This may have been an inconvenience to Allstate, but Mr. Nugent was within his rights in doing so.
Allstate contends that it never received adequate information to handle the claims in view of the previous marriages. (Omar had one son and Betty had two daughters.) It is fairly obvious from the record however, that these children were married or over 21 years of age and not living with or dependent on Omar Dauzat. Mr. Gold, Allstate’s attorney, readily admitted that there was nothing to indicate that Omar Dauzat’s son by a previous marriage was dependent on his father and *771 on the face of documents provided by plaintiffs, he was over 21 years of age. (Allstate’s investigation showed that he was living and working in Ville Platte, Louisiana.)
The record shows that the Dauzat claim was handled by Jack Wilkinson, an Allstate adjuster, Joe Bourgeois, an Allstate adjuster, Leo Gold, an attorney, and finally, Jimmy Stoker, an attorney in Mr. Gold’s office. The reassignment of the file among these four parties did not serve to expedite the claim. In regard to Mr. Gold the court observed, “When suit was filed the matter was turned over to a very competent attorney, Mr. Leo Gold. It was turned over to him, however, not to handle, but merely to secure delay from plaintiff’s attorney. Once this was accomplished, the file was recalled from Mr. Gold or he was notified to do nothing further on it because the company wanted to work the matter out with Mr. Nugent through its own agents.”
“Mr. Gold’s testimony points up the fact that the company did not seriously and in good faith turn the file over to him for defense.”
While it is true that Mr. Nugent was not overly enthusiastic about cooperating with Allstate, we cannot say that the trial court was manifestly erroneous in holding that Allstate was arbitrary and capricious in failing to pay compensation benefits due the plaintiffs for a period of more than five months after the death of Omar Dauzat. The repeated delays and varied sources of information available to defendants justified the trial court in finding that their failure to pay compensation was arbitrary and capricious and in violation of La.R.S. 22:658.
The second issue in this case is whether or not $2,000.00 in attorney fees is inadequate or excessive. Defendants contend that they should be reduced to $350.00 at most, while plaintiffs contend that they should be increased to $3,500.00. The trial court has much discretion in assessing attorney fees in such a case. Mire v. Grigsby Brothers, Inc., 191 So. 2d 362 (La.App.3d Cir., 1966). Awards of $2,000.00 to $3,000.00 in such cases are not unusual. Of course such penalty fees are credited to the attorney fees already owed by the client to his attorney and therefore it inures to the benefit of the client primarily rather than his attorney.
Defendants cite several cases where penalty attorney fees were much lower than in the instant case. However, the quantum in those cases was considerably lower than in the instant case. Here the efforts of the plaintiff attorney, and the quantum involved justify an award of $2,000.00. Defendants felt that attorney fees should be minimal, since they finally admitted liability and the only issues actually tried were whether or not penalties were due and if so, how much. The trial court felt, however, that it was plaintiffs’ attorney’s efforts that brought about defendants’ eventual capitulation, and the record shows that in addition to the trial, the case required plaintiff’s attention for a period of several months. We cannot say that the trial court was manifestly erroneous in awarding attorney fees of $2,000.00.
As for increasing attorney fees, even though the case has been appealed to this court and is subject to an application for rehearing and appeal to the Supreme Court, we cannot say that they should be increased at this time. Again, we cannot say that the judgment of the trial court is manifestly erroneous, and therefore it should be affirmed.
However, only an insurer and not an employer is subject to payment of penalties and attorney fees under La.R.S. 22:-658 and 23:1201.2. Poindexter v. South Coast Corp., 204 So.2d 615 (La.App.4th Cir., 1967); Bassemier v. W. S. Young Construction Co., 110 So.2d 766 (La.App. 1st Cir., 1959). Therefore, the judgment of the trial court is amended insofar as it *772 holds Pel State Oil Company liable for penalties and attorney fees for which Allstate Insurance Company alone is liable.
For the foregoing reasons the judgment of the trial court is amended and affirmed at the cost of defendant-appellant.
Amended and affirmed.
SAVOY, J., dissents being of the opinion that defendant was not arbitrary and that attorney fees and penalties should not be allowed.