242 So.2d 539

Mrs. Betty Z. DAUZAT et al.

v.

ALLSTATE INSURANCE COMPANY et al.

L. Wayne SYLVESTER et ux.

v.

LIBERTY MUTUAL INSURANCE COMPANY et al.

Nos. 50402, 50712.

Dec. 14, 1970.

Rehearing Denied in No. 50712 Jan. 18, 1971.

Gold, Hall & Skye, Leo Gold, Jimmy M. Stoker, Gist, Methvin & Trimble, Howard B. Gist, Jr., Alexandria, for defendant-appellant-relator.

Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant-respondent.

Guillory, Guillory & Guillory, Robert K. Guillory, Eunice, for plaintiff-appellant.

Davidson, Meaux, Onebane & Donohoe, J. J. Davidson, Jr., Lawrence L. Lewis, III, Lafayette, for defendant-appellee.

HAMLIN, Justice:

In the exercise of our supervisory jurisdiction, we directed Certiorari to the Court of Appeal, Third Circuit, for review of its judgments in the cases of Dauzat, et al. v. Allstate Insurance Company, et al., 230 So.2d 768, and Sylvester, et ux v. Liberty Mutual Insurance Company, et al., 237 So. 2d 431. Art. VII, Sec. 11, La.Const. of 1921; 255 La. 790, 232 So.2d 516; 256 La. 764, 238 So.2d 748. The cases were consolidated for argument and decision in this Court because of an identical issue raised in applications for Certiorari.

No. 50,402, the Dauzat Case, is a workmen's compensation proceeding in which the trial court awarded death benefits to the plaintiff widow individually and for the use and benefit of the minor children of her marriage to Omar Dauzat, who was murdered during an armed robbery which took place in the course of his employment. The trial court also rendered judgment against Pel State Oil Company and Allstate Insurance Company for penalties and attorney fees. Defendants appealed the assessment of penalties and attorney fees to the Court of Appeal, Third Circuit. Oral argument was presented to a panel of three judges on original appellate hearing. Thereafter, counsel was notified by

letter that the case was resubmitted en banc on such briefs as had been previously filed and on any additional briefs counsel might desire to file. The case was resubmitted on additional briefs on December 29, 1969. No oral argument was made at that time, and counsel at no time requested oral reargument for the resubmission. The complement of the Court of Appeal, Third Circuit, is six judges; but, only five judges considered this matter, the sixth or absent judge being one who had sat on the original panel. The Court of Appeal amended the judgment of the trial court insofar as it assessed penalties and attorney fees against the employer; it affirmed it in all other respects. Two judges dissented. After application for rehearing—oral argument was prayed for—was denied, (two judges dissented from the refusal to grant a rehearing) Certiorari was applied for to this Court. We requested that the Court of Appeal, Third Circuit file a return to relator's Assignment of Error No. 5, which recites:

"It is respectfully submitted that the Court of Appeal, Third Circuit, erred in failing to afford opportunity to Allstate Insurance Company to present oral argument before the en banc panel of judges and in failing to include in the en banc panel Judge William A. Culpepper, who did hear oral argument when sitting on the three judge panel on original hearing.

"* * * The net effect of the procedure adopted by the Court of Appeal in this case was that oral argument was heard by two judges only of the five which decided the case. The applicant for this writ, cannot, of course, assert that opportunity to argue orally before the en banc panel would necessarily have resulted in a different decision on the part of the majority. Likewise, it cannot be asserted that participation by Judge William A. Culpepper would have changed the views of any of the majority, especially since his views on the case are unknown. Nevertheless, it is respectfully submitted, that, if oral argument is not to be mere empty gesture, the views of a judge who sits on a panel of judges constituting an original hearing which hears oral argument, should not be discarded by his unexplained elimination from the Court when the Court purports to sit en banc." [1]

Unlimited Certiorari was granted, but, because of the decision we shall reach infra, it will only be necessary to consider Allstate's Assignment of Error No. 5.

In No. 50,712, L. Wayne Sylvester and his wife sought damages from the defendants for the wrongful deaths of their two minor children resulting from accident. It was stipulated in the trial court that defendants were liable for the wrongful deaths and that there was no claim for pain and suffering on the part of the children before their demise. The only issue before the trial court was quantum; it awarded $30,-

---

1. The return of the Court of Appeal stated, in part:

"6. The court heard the reargument en banc under its constitutional authority to do so, Article VII, Section 23. This provision authorizes a court of appeal to sit en banc 'when deemed necessary or expedient by the judges thereof.'

"7. We are aware of no constitutional or other provision which makes mandatory the full attendance of all judges when an appeal is heard en banc. Under intra-court procedures, we have a predetermined method of assuring that en banc sittings will not result in a three-three tie, necessitating certification or the expense and delay of calling up a district judge to sit as seventh member of the court.

"8. We are aware of no constitutional or other provision which requires us to afford oral argument when a case is submitted on rehearing or upon reargument. As a matter of fact, when the Supreme Court of Louisiana sits in divisions as authorized by Article VII, Section 5, the Constitution specifically provides for the assignment of their justices to act with a panel when a majority does not concur, and that 'the decision may be rendered without further argument.' (As will be seen in the reports commencing with 149 Louisiana, when Your Honors did sit in three divisions, such procedures were followed.)

"9. This court respectfully suggests that, with this clarification, the administration of an intermediate appellate court is a matter entrusted to it by the State Constitution, and that its administrative procedures should not be disturbed in the absence of conflict with constitution or statute.

"Respectfully submitted,
"FOR THE COURT:
[(Sgd) Albert Tate, Jr.]
"ALBERT TATE, JR.
"Presiding Judge"

000.00 to each parent per child, or $120,-000.00 plus stipulated medical and funeral expenses.

Defendants appealed to the Court of Appeal, Third Circuit. The matter was originally presented to a panel of three judges, and it was then considered by the court en banc (six judges). The judges were confused as to the correctness of the trial judge's award and were equally divided (three to three) as to which of two enumerated principles to apply. They certified the following question to this Court, "In view of the amounts of awards which have been made in other cases, did the trial court abuse its discretion under the facts here presented by awarding plaintiffs in the instant suit substantially greater sums than have been awarded for wrongful deaths of children in the past?" 236 So.2d 63.

We declined to answer the foregoing question, stating that until the Court of Appeal had made a factual determination as to the value of plaintiffs' claim we could not say whether the district court had abused its discretion in fixing the award. We concluded that the certification was not authorized by Art. VII, Sec. 25, La.Const. of 1921, and LSA–R.S. 13:4449, and the record was returned to the Court of Appeal. 255 La. 1107, 234 So.2d 754.

On return of the Sylvester Case, the Court of Appeal sitting as a panel of five judges heard the matter. The judgment of the trial court was amended by awarding L. Wayne Sylvester and Barbara L. Sylvester the sum of $20,000.00 each for the death of each of their minor children. Two judges of the Court of Appeal dissented from the judgment, being of the opinion that the judgment of the trial court was correct. We granted limited Certiorari and ordered: " * * * that a writ of review issue limited to Assignment of Errors, A, B, C and D; that the Court of Appeal send up the record in duplicate of the case; that this matter be consolidated and argued with Dauzat et al., v. Allstate Insurance Company, Inc. et al., 255 La. 790, 232 So.2d 516, fixed for November 10, 1970; that the consideration of the remaining Assignment of Errors is reserved until after the disposition of this matter; and that counsel for plaintiffs and defendants be notified."

Assignment of Errors A, B, C and D recite:

"A. This case was decided by the Court of Appeal by less than a majority of the judges sitting in the case and this is in violation of Louisiana Constitution Article VII, Section 26.

"B. When the judges of the Court of Appeal are equally divided on an issue the flip of a coin or the chance drawing of lots is an unconstitutional method of determining the outcome of cases.

"C. The Louisiana Constitution, Article VII, Section 26 states that ' * * *

The remaining judges may appoint district judges or lawyers having the qualifications of judges of Courts of Appeal to sit in the case * * *'

"D. Since some of the Louisiana Courts of Appeal now have six judges, it is important to decide the res novo issue of how to decide a case when there is an equal division of judges on a given issue."

In this Court the Sylvesters contend that since the Court of Appeal was equally divided on an issue it should have followed Art. VII, Sec. 26, La.Const. of 1921, and called upon another judge to sit in judgment of the case. They further contend that the manner in which this case was handled prevented a fair rendition of judgment and violated the intents and purposes of the constitutional provision, supra.

Allstate Insurance Company, Inc. summarizes its argument in this Court as follows:

"In summary, the complaint of the defendant-appellant Allstate Insurance Company in Specification of Error Number Five is that any judge who sits on an initial panel created pursuant to the Constitution should not thereafter be eliminated from the panel of the court which ultimately decides the case, whether a court of three or en banc. The practical need of having a court composed of an odd number of judges to permit of deci-sion in cases where the court is divided can easily be appreciated. However, it is respectfully submitted that nothing in the law provides that a member of a regularly constituted panel of judges created pursuant to the Constitution of the State of Louisiana and the rules of the appellate courts, shall subsequently be excluded from the panel after participating in the case—whether for reasons of expediency or otherwise.

"We respectfully submit that if oral argument is to have any meaning, it should be heard by all judges who participate in making the decision in the case. Argument before two of five judges who decide the case can hardly be considered oral argument.

"It may well be that the Court of Appeal anticipated, after the initial discussion among the three judges who heard the case argued, that a divided court was inevitable and that time could be saved by having the case resubmitted rather than deciding the case and letting the aggrieved party apply for a rehearing as is normally the case. For such a reason the undersigned would express no complaint if the entire court in a true en banc sitting had held a hearing and heard reargument, or the three judges who were already in the case had remained in the panel in the event the use of a five-judge panel was deemed imperative. In any event, we respectfully

submit that the Court of Appeal should have made known its intent to decide the case without further oral argument in the absence of requests therefor."

Counsel for Liberty Mutual Insurance Company and Fogleman Truck Lines argue in this Court that:

"By a pre-arranged formula, the Third Circuit adopted a procedure which it considered the appropriate method of handling the situation where the judges could not agree. One of the judges is eliminated from the panel which is to hear the case, and the remaining five judges are constituted the panel. The determination is not controlled by the Court in the particular case. The selection is not arbitrary or discriminatory but is made by carrying out a plan determined long before the need for its application presents itself. Instead of appointing a judge or lawyer, who is not an elected member of the Court, and who would in effect alone be deciding the issues, as the Court may do, it follows a plan which it considers far better and permits the Court itself, through a majority of the judges sitting, to decide the case.

"It is submitted that this action of the Third Circuit is in full accord with the spirit and the letter of the Constitution and should be approved. In its sound discretion it may provide for the administration of the Court, make its rules, and carry out its internal affairs, without the litigants having the right to question such action, as long as the action is fair, reasonable, and not contrary to the Constitution, law or jurisprudence.

"Article 7, Section 26 provides that the Court 'may appoint' a judge or lawyer to determine a case when the judges cannot agree. This is clearly permissive, and in no way mandatory. It shows the intent that the Court should adopt proper measures to enable it to decide the case, but leaves it to the Court to determine the method of procedure to be used. It 'may' use the procedure suggested, but it is not required to."

Counsel for the Dauzats argue in this Court that:

"The present provision of our Constitution [Art. VII, Sec. 26] is permissive only, and it is submitted that the action of the Court of Appeal in handling the matter is fair and proper, and it has full and complete constitutional authority to support it.

"The procedure or method used by the Court of Appeal is an internal administrative matter not subject to inquiry or control by the litigants. As pointed out above, the Court is charged with the performance of its constitutional duties, and in doing so has the full authority to make rule for its own internal management, and may provide for its own internal administration. No litigant has any constitutional or legal right to inquire into

matters of internal administration of the Court, in the absence of some showing of disregard of fundamental rights, discrimination or partiality."

The issues herein presented demand an interpretation of Sections 23 and 26 of Article VII of the Constitution. Section 23 provides:

"In each court of appeal, the senior judge in point of service on the courts of appeal shall be the presiding judge; if two or more judges in the same court have served the same length of time, the eldest shall preside.

"Courts of appeal having more than three judges shall sit in rotating panels composed of three judges selected in conformity with the rules adopted by the court, two of whom constitute a quorum. *However, in exceptional cases or when deemed necessary or expedient by the judges thereof, a court of appeal may sit en banc.*

"If a vacancy occurs from any cause in the office of judge of any court of appeal, it shall be filled by the appointment by the Supreme Court of a district judge residing in a court of appeal circuit or district, as the case may be, other than that from which the court of appeal judge was elected, until the congressional election next following, at which time his successor shall be elected for the remainder of the term." (Emphasis ours.)

Section 26 of Article VII of the Constitution provides:

"No judgment shall be rendered by any of the courts of appeal unless a majority of the judges sitting in the case have read the record and have concurred in the judgment. If for any reason they cannot concur, or if one or more of the judges are absent, recused, or unable to serve, they, or the remaining judges, *may appoint* district judges, or lawyers having the qualifications of judges of courts of appeal, to sit in the case." (Emphasis ours.)

As above recited, Section 26 is Act No. 561 of 1958, adopted Nov. 4, 1958. Prior to amendment, the section recited:

"No judgment shall be rendered by any of the Courts of Appeal without the concurrence of two judges. At least two judges shall read each record, and the conclusions of the court shall be reached in consultation before the case is assigned for writing the opinion, and when for any reason two judges cannot agree, they *shall appoint* a district judge, or a lawyer having the qualifications of a judge of the Court of Appeal, to sit in the case. Should one or more judges of a Court of Appeal be absent, recused, or unable to serve, the remaining judge or judges may appoint district judges, or lawyers with the aforesaid qualifications, to sit in the case." (Emphasis ours.)

The increase in litigation during the last two decades has caused a change in the complement of the Courts of Appeal of Louisiana. See, Art. VII, Sec. 21, La. Const. of 1921, Acts 676 and 696 of 1968, adopted Nov. 5, 1968. There has also been a change in the appellate structure of the courts of Louisiana. Cf. 23 La.L.Rev. p. 240; 24 La.L.Rev. p. 555. These changes have necessitated internal administrative adjustments within the Courts of Appeal.

As written before its 1958 amendment, Section 26, supra, was explicit. It contained a mandatory provision that when two judges of a Court of Appeal could not agree on the decision of a case, a district judge, or a lawyer having the qualifications of a judge of the Court of Appeal, had to be appointed to sit in the controversial case. The verbiage was "they shall appoint * * *"

As now written, Section 26 furnishes laxity. It provides that where the judges sitting in a case cannot concur, they *may* appoint a district judge, or a lawyer having the qualifications of a judge of the Court of Appeal, to sit in the particular case. Within certain bounds, judges of the Courts of Appeal are now vested with discretion which can be timely exercised. This avoids deadlock and enables the courts to render decisions without delay.

Section 23, supra, provides that where a Court of Appeal has more than three judges, it shall sit in rotating panels of three judges. This section then provides that in exceptional cases or when the Court deems it necessary or expedient, it may sit *en banc;* no definition is given of *en banc.* The section does not enumerate the number of votes necessary to render a majority decision when the Court is sitting *en banc*— Section 26, supra, infra to Section 23, merely states that no judgment shall be rendered by any of the Courts of Appeal unless a majority of the judges sitting in the case have concurred in the judgment; Section 23 does not state the number of judges required to constitute a sitting *en banc.* We are therefore presented with questions begging our interpretation.

Ballentine's Law Dictionary, Third Edition, 1969, recites, "en banc (French) On the bench. See full bench." Under full bench, we find, "The Court with all the qualified judges sitting in a case, particularly an appellate court." It is to be noted that Ballentine tells us to see *full bench* but does not define *en banc* as a *full bench.* "Words and Phrases" defines *"Banc"* as follows, "Bench; the place where the court regularly sits; the full court." *Banc* is defined in Black's Law Dictionary, as follows:

"Banc. Bench; the place where a court permanently or regularly sits; the seat of judgment; as *banc le roy,* the king's bench; *banc le common pleas,* the bench of common pleas.

"The full bench, full court. A 'sitting *in banc*' is a meeting of all the judges of a court, usually for the purpose of hearing arguments on demurrers, points reserved, motions for new trial, etc., as distinguished from the sitting of a single judge at the assises or at *nisi prius* and from trials at bar. Cowell."

In 1920, the Supreme Court of Colorado consisted of seven judges. The Constitution provided that the Court may sit *en banc* or in two or more departments as the court might, from time to time, determine. In speaking of *en banc*, the Colorado Supreme Court in Mountain States Telephone & Telegraph Co. v. People, 68 Colo. 487, 190 P. 513, March 2, 1920, June 7, 1920, stated, "Under a constitutional provision such as ours, a majority of the members of the court constitute the court en banc, and a majority of the court as thus constituted, of course may decide. * * *" See, F. T. C. v. Flotill Products, Inc., 389 U.S. 179, 88 S.Ct. 401, 19 L.Ed.2d 398.

Art. VII, Sec. 4, La.Const. of 1921, provides that except when judges of other courts are called in, the Supreme Court of Louisiana shall be composed of a Chief Justice and six Associate Justices, four of whom shall concur to render judgment when the court is sitting *en banc*. Art. VII, Sec. 5, La.Const. of 1921, provides that the Supreme Court may sit in divisions, and that under certain circumstances two judges of the Courts of Appeal may be called to the Court. The section concludes, "When judges of the Courts of Appeal are called in and the court is sitting en banc, five judges shall concur to render judgment. * * *"

In a per curiam in Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633, April 29, 1940, this Court interpreted the above sections as follows:

"This motion by the plaintiffs, appellants, to vacate and set aside the judgments rendered in this case and to restore the case to the calendar of this court is refused on the ground that the judgment is final and the motion is therefore out of order. There is nothing in section 4, 5 or 6 of Article VII of the Constitution or in any other section in the Constitution requiring that all of the seven members of the court shall be present and participate in the hearing and deciding of every case. All that the Constitution requires in that respect is in section 4 of Article VII, declaring that the court shall be composed of seven members, four of whom shall concur to render a judgment when the court is sitting en banc, meaning when the court is not sitting in sections."

We find that the above reasoning in the Jackson case and the definitions quoted can be applied herein in determining the number of judges necessary to constitute an *en banc* sitting of a Court of Ap-

peal. The court cannot sit in panels, divisions, or sections when sitting *en banc*. We find that it is not necessary that the entire complement of the court—here, six judges—be present or sitting on the bench in order to constitute a sitting *en banc*. All that is required is a majority of the complement of the court; four judges would constitute a majority of the Court of Appeal, Third Circuit. Of course, the entire court may sit, and it is possible that an extra judge or lawyer called in by the court to break a deadlock may also sit with the entire court. Herein, the Court of Appeal, Third Circuit, sitting en banc with five members present was competent to render judgments in the present controversies. Such judgments, however, had to be rendered by majority vote.

█ The last question we must answer is whether a majority vote has to be by a majority of the judges of a Court of Appeal sitting *en banc* or by a majority of the *membership or complement* of the Court of Appeal. A reading of the Jackson case supra, and all sections of the Louisiana Constitution and Louisiana statutory law pertaining to the present issues constrains us to conclude that when the Court of Appeal sits *en banc,* a judgment must be rendered by a majority of the full complement or membership of the Court—not a majority of those sitting *en banc.* The Court of Appeal, Third Circuit consists of

six judges; therefore, a majority decision and judgment has to be concurred in by four members of that Court or its complement when it is sitting *en banc*. Art. VII, Sec. 26, La.Const. of 1921, supra, provides a legal tool whereby a concurrence can be secured and a majority decision and judgment rendered. No district judge or lawyer was called to sit in the instant controversies; judgments were rendered by three members of a five judge court sitting *en banc,* with two dissents in each case. A majority judgment had to be rendered by four members of the *en banc* court; this did not take place. The judgments are therefore not valid and must be set aside.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, in the case of Dauzat, et al. v. Allstate Insurance Company, et al., 230 So.2d 768, is set aside; the case is remanded to the Court of Appeal, Third Circuit, for hearing according to law and the views herein expressed. All costs of this Court to be borne by plaintiffs.

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, in the case of Sylvester, et ux. v. Liberty Mutual Insurance Company, et al., 237 So.2d 431, is set aside; the case is remanded to the Court of Appeal, Third Circuit, for hearing according to law and the views herein expressed. All costs of this Court to be borne by defendants.

SANDERS, J., dissents with written reasons.

BARHAM, J., concurs and assigns written reasons.

TATE, J., recused.

SANDERS, Justice (dissenting).

The majority, in my opinion, correctly holds that the Court of Appeal rendering the judgment in this case was sitting *en banc* despite the absence of one of its members.

I disagree, however, with the further holding that a judgment in the Third Circuit Court of Appeal must be rendered by a majority of the entire 6-judge court, that is, by four members. Section 26 of Article VII of the Louisiana Constitution is explicit on this point. It provides:

> "No judgment shall be rendered by any of the Courts of Appeal unless a majority of the judges sitting in the case have read the record and have concurred in the judgment."

Hence, in the Courts of Appeal, only a majority of the "judges sitting in the case" are required to render a judgment. For this Court to hold otherwise does violence to the Constitution and upsets the well-established procedures in the intermediate Courts of Appeal.

For the reasons assigned, I respectfully dissent.

BARHAM, Justice (concurring).

The specific question presented for our determination in these consolidated cases is whether a procedure for court sittings established by rules of the Third Circuit Court of Appeal is unconstitutional. From the record before us in these two suits, including a return of the Third Circuit Court of Appeal to the application for writ of certiorari or review in the Dauzat case, we can determine the following circumstances to reflect the problem before us:

The Court of Appeal, Third Circuit, is a six-member court. As authorized by the Constitution, it routinely sits in rotating panels of three. However, after rendition of judgment by such panels, applications for rehearing are considered by the court en banc—in its entirety. If a rehearing is thought to be merited by a majority of that en banc court or if the court is equally divided, the rehearing is granted.

It is only recently that the Third Circuit became a six-member court, with the result that there is now a possibility that the court sitting en banc may be divided equally in opinion and unable to render a judgment. To avoid such a stalemate, the practice which is the crux of the problem before us was adopted by that court: By lot or chance one of the six members is eliminated from the court en banc, and the consequence is that the position opposed by that judge automatically prevails upon rehearing.

Such a situation has occurred in each of the consolidated cases. In Sylvester, after a trial court award the case was heard by and submitted to a panel of three judges, but judgment was not rendered by the court to which the matter was submitted. All parties were notified that the case would be resubmitted to the court en banc without oral argument or further briefs. The court there was equally divided in opinion (three to three) and certified a question to this court. We declined to answer on the ground that the question submitted was factual and not legal, and returned the record. On oral argument on remand to the Court of Appeal, the parties faced five judges, apparently sitting under a "predetermined method of assuring that en banc sittings will not result in a three-three tie * * *".

In Dauzat, the majority of the three-man panel on original hearing amended and affirmed a district court judgment for relator. On rehearing, apparently (for in that case we do not have the certification in which the court itself said it was equally divided) three members of the six-man court agreed with relator, but in the lot or chance drawing of a five-judge panel to break the tie, a judge who had voted in relator's favor was eliminated, and three of the remaining five members of that court favored respondents' position and reversed the judgment rendered on first hearing by the panel of three.

Louisiana Constitution Article 7, Section 23, as amended in 1958, provides:

" *     *     *     *     *     *

"Courts of appeal having more than three judges *shall sit* in rotating panels composed of *three judges* selected in conformity with the rules adopted by the court, two of whom constitute a quorum. However, in exceptional cases or when deemed necessary or expedient by the judges thereof, a court of appeal *may sit en banc* * * *." (Emphasis here and elsewhere supplied.)

Article 7, Section 26, as amended in 1958, reads:

"No judgment shall be rendered by any of the courts of appeal unless *a majority of the judges sitting in the case have read the record and have concurred in the judgment. If for any reason they cannot concur, or if one or more of the judges are absent, recused, or unable to serve, they, or the remaining judges, may appoint district judges, or lawyers having the qualifications of judges of courts of appeal, to sit in the case.*"

. Before the 1958 amendments, which were part of the general jurisdictional revision for the appellate courts and the Supreme Court, each of the Courts of Appeal consisted of only three judges. Former Article 7, Section 26, read:

"No judgment shall be rendered by any of the Courts of Appeal without the *concurrence of two judges. At least two judg-*

es shall read each record, and the conclusions of the court shall be reached in consultation before the case is assigned for writing the opinion, and *when for any reason two judges cannot agree, they shall appoint a district judge, or a lawyer* having the qualifications of a judge of the Court of Appeal, *to sit in the case.* Should one or more judges of a Court of Appeal be *absent, recused, or unable to serve,* the remaining judge or judges *may* appoint district judges, or lawyers with the aforesaid qualifications, *to sit in the case."*

I first address myself to the evolvement of present Article 7, Section 26. It is obvious that no judgment could be rendered by a Court of Appeal prior to the 1958 amendments without concurrence by a majority of the entire court. It was mandatory when two judges could not concur that the court as constituted in the sitting appoint a district judge or lawyer to sit in the case in order to make an adjudication by concurrence of two. Former Section 26 used the word "shall" in the sentence regarding the inability of two judges to concur. In a separate, final sentence of that section, it was provided that if one or more of the judges of the court were *absent, recused, or unable to serve,* the remaining judges were permitted to call in a district judge or lawyer to sit in the case. In order to indicate permissiveness in the latter situation, the word "may" was used. In the revision the last two sentences of the section (the one dealing with lack of a majority concurrence and the other with the absent, recused, or disabled judge) were combined into one sentence. To retain the permissiveness for the latter situation, the auxiliary verb "may" had to be used in the combining of the thoughts, and the auxiliary verb "shall" was omitted. Additionally, permissiveness is required now when the courts are sitting in panels of three. Since all Courts of Appeal are now composed of more than three members, a panel of three which cannot obtain a concurrence of two for any reason certainly should be permitted to first exhaust the remaining composition of that court before calling for outside assistance.

Sections 23 and 26 of Article 7, when read in pari materia and given their full import and meaning, force the conclusion that the chance method for breaking tie votes in the Court of Appeal is unconstitutional. The Courts of Appeal can *sit* in only two compositions: They may *sit* in panels of three judges or they may *sit* en banc. Without recourse to a recitation of all the abundant definitions of "en banc", I conclude that en banc means a full court. Therefore, in a *sitting* en banc of a six-member appellate court, the court is *composed* of its six members whether in fact one or more are absent by reason of illness, recusation, or other cause. It is mandatory under Article 7, Section 26, that a *"majority of the judges sitting"* must concur in any

judgment in a Court of Appeal. If a panel of three is sitting, of course a concurring by two is the requirement for judgment. If the Court of Appeal *sits* in the only other manner provided, *en banc,* the number of judges required to constitute a majority of the *full court* is the number required to concur in order for any judgment to be rendered. *In a court composed of six,* as here, *four judges must concur* whether four, five, or six actually occupy the bench and take part in the case, for the six judges, the full court, are sitting as contemplated by Section 26, Article 7.

It is well to note that when court judgments are determined by lot and chance rather than by reason and logic, judges will become unnecessary. Here it is after logic and reason have been utilized to firm up the minds of the individual judges who compose the court that the final consensus is reached and the litigants' rights finally adjudicated by mere chance and lot. The result reached by the Court of Appeal under its prearranged system of eliminating a judge has no more validity than if in the presence of all six a coin was flipped or dice rolled to determine which opinion of the evenly divided court will prevail. While the lot system may save time and may easily resolve differences between panels of the court, this is not a court procedure authorized or sanctioned by our Constitution. Although my concurring opinion could belabor the question of the

reasonableness, the fairness, and the wisdom of the method now employed by the Third Circuit, it is not necessary that I do so, for this court's only obligation here is to determine the constitutionality of the practice of that court.

I respectfully concur.