TUCKER, Judge.
This is an appeal by Lawes J. Alonzo from a judgment of the State Civil Service Commission which upheld his dismissal as Comptroller of the Department of Highways, State of Louisiana ^hereinafter referred to as the department).
The appellant, a career Civil Service employee of some twenty-five (25) years ex *53 perience, was dismissed from his position on May 7, 1971, by the then director of the Department, Leon Gary. That dismissal was effected by a letter from Mr. Gary which set out, at length, five causes or deficiencies which prompted the termination; they may be capsuled in the following terms:
1. Failure to reconcile funds committed on highway projects with amounts actually necessary for job completion, so that idle, unnecessarily committed funds could be freed for productive use; failure to reconcile records on deposits in various courts for right of way acquisitions; failure to maintain adequate records on construction contracts payable.
2. Failure to properly reconcile payments of bonds and coupons and the negligent physical handling of those obligations.
3. Failure to have proper accounting procedures and controls for the traffic services, sign and signal shop.
4. Failure to properly account for gasoline courtesy cards and purchases thereon.
5. Failure to reconcile billings and verify the deduction lists for the group insurance program purchased for all State employees.
Mr. Alonzo, thereafter, appealed that dismissal to the State Civil Service Commission. Lengthy testimony was taken before that body and, subsequently, the three members sitting affirmed, by a 2 to 1 vote, the action of the director. The case is now before us on an appeal of that judgment; we find that the action of the majority of the Civil Service Commission must be affirmed.
Although Article 14, Section 15(0)(1) of the constitution of this state dictates that appeals from Civil Service Commission rulings shall be to the supreme court of this state, it has been previously decided that our highest court’s jurisdiction is restricted in the constitution by Article 7, Section 10. Bradford v. Department of Hospitals, 255 La. 888, 233 So.2d 553 (1970). Thus, the various courts of appeal now serve as the forum for review of the decisions by the Civil Service Commission. The scope of that review is also restricted by Article 14, Section 15(0) (1), which provides, in pertinent part:
“There is vested in the State Civil Service Commission and in the appropriate Civil Service Commissions for the several cities respectively the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases. The decision of the appropriate Civil Service Commission shall be final on the facts, but an appeal shall be granted to the Supreme Court of Louisiana on any question of law if application to the Commission is made within thirty (30) days after the Commission’s decision becomes final. . . . ” (Emphasis added)
Our courts have adhered strictly to this mandate and have stated consistently that only where the record is barren of evidence to support the commission’s ruling does a question of law arise. Guillory v. State Dept. of Institutions, Louisiana State Penitentiary, 234 So.2d 442 (La.App. 1st Cir.1970).
The appellant initially prays that the action of the commission be vacated on a proposition that Mr. Alonzo has been denied due process of law under the State and Federal constitutions because only three (3) members of that five (5) man body heard the case and all three of those sitting did not agree on a decision, the appellant thus arguing that their action does not represent a judgment by a majority of the five member commission. We conclude that this issue, which is apparently res nova, must be decided adversely to the appellant. LSA Constitution, Article 14, Section 15 (C) provides as follows:
“There is hereby created and established a State Civil Service Commission to be *54 composed of five members who are citizens and qualified voters of the State of Louisiana. Three members of the Commission shall constitute a quorum. . . . ” (Emphasis added)
Initially, we find no written law specifically providing that when only three members of the state civil service commission sit, that all must concur before any action that they take will be valid. Absent such, we are required to turn to the regularly accepted meaning of the word “quorum”. That word was defined by our supreme court in State v. Birbiglia, 149 La. 4, 88 So. 533 (1921), in these terms:
“The word ‘quorum,’ as used in section 3 of Act 98 of 1880, and as used with regard to all deliberative assemblies, means the number of members whose presence is required for transacting business.”
In 74 C.J.S. p. 171, we find the commentary on the meaning of that term.
“The word ‘quorum,’ now in common use, is from the Latin, and has come to signify such a number of the officers or members of any body as is competent by law or constitution to transact business; such a number of an assembly as is competent to transact its business; such a number of the members of any body as is, when duly assembled, legally competent to transact business; such a number of a body as is competent to transact business in the absence of the other members. The quorum of a body is an absolute majority of it unless the authority by which the body was created fixes it at a different number. The idea of a ‘quorum’ is that when that required number of persons goes into a session as a body the votes of a majority thereof are sufficient for binding action. Thus the word ‘quorum’ implies a meeting, and the action must be group action, not merely action of a particular number of members as individuals.” (Emphasis added)
We conclude that when a quorum of three members of the State Civil Service Commission are present, the actions of the majority of those three are constitutionally valid. The appellant strenuously argues, however, that the case of Dauzat v. Allstate Insurance Company, 257 La. 349, 242 So.2d 539, is controlling of this issue. We find that the Dauzat case is clearly distinguishable from the case at bar, as it deals only with the question of the number of appellate judges required for a majority when a court of appeal of this State is sitting en banc, as provided in LSA Constitution Article 7, Section 23. We find nothing in that case which would indicate that it is to be applied beyond the narrow issues resolved therein.
The jurisprudence of this state has previously decided that a civil servant’s incompetency is adequate grounds for dismissal. Cunningham v. Caddo-Shreveport Health Unit, etc., 141 So.2d 142 (La.App. 1st Cir. 1962). On the merits of the question of whether the record reflects facts sufficient to support the action of the majority of the commission, their well written reasons for judgment initially reflects that of the charges made against Alonzo, — that the second, third and fifth were the most serious.
Charge two concerned the comptroller’s failure to adequately oversee the proper filing, storage and safe guarding of department bonds and coupons and his failure to reconcile their payments, functions for which the comptroller is responsible. Mr. Gary stated that shortly after his term began, and by accident, he found in a department storage building current bonds and coupons scattered about on the tops of desks, chairs, and filing cabinets completely un-attended to and un-accounted for. At page 374 of the transcript, we find Mr. Alonzo’s testimony to be:
“ . I must admit that when Mr. Taylor did go to this storage house, he found that the coupons were in envelopes in boxes, more or less stored and there was very little effort being made to reconcile the coupons to the actual bonds. So, I delegated him to bring, so to speak, *55 chaos out of the mess that had been created. That was a mess and I admit it." (Emphasis added)
The commission next found that, in connection with charge three, the Comptroller had failed to make periodic, thorough and regular post audits and inventories of equipment and supplies and to reconcile purchases with the inventory. The record indicates that Mr. Alonzo, indeed, failed to accomplish audits and inventories of this shop regularly as was his responsibility, and by his own admission, the last fiscal inventory of that facility was taken in 1969 and, we note that the 1971 report of the Legislative Auditor contains criticism of a similar nature pertaining to a deficiency in the accounting function of the funds expended on signs and signals, which deficiency had been previously criticized by the auditor and seemingly remained uncorrected.
The record further contains ample evidence to support the commission’s finding that the appellant demonstrated incompetence, lack of imagination, and procrastination in regard to the proper implementation of the group insurance program entered into by the department. Mr. Gary’s letter of termination states the problem in this way:
“5. Group Insurance — with the installation of the uniform state group, hospitalization and life insurance plan in July, 1970, premiums on Blue Cross and Pan American State Group Insurance policies have been billed to the department on a monthly basis and paid from unverified deduction lists. Beginning with the inception of the policy on July 1, 1970, and continuing through the April billing, there has been no reconciliation of billings and no verification of the deduction lists. Payments have been made on the basis of a deduction schedule given to the department by Blue Cross and not verified by the department. As of today, the controls and accounting on payments made and due are in a state of complete confusion.”
Mr. Sidney Hines, an employee of the division of administration whose responsibility was that of manager or coordinator of the group insurance program for the state, at page 548 of the transcript, testified as follows:
“Is it correct to state, from your knowledge, that through the April billing there had been no reconciliation of billings and no verification of the deduction list by the Highway Department?
A. To my knowledge, there had not been.
Q. Do you know how payments were made by the Highway Department to Blue Cross?
A. I understand that they were made on the basis of what payroll deductions had been made.
Q. Did you reach any conclusion as to whether or not the situation could be cleared up between the Highway Department and Blue Cross?
A. Yes, sir, I’m confident that it could have been cleared up.
Q. Were you able to effect this clearing up while Mr. Alonzo was in office at the Highway Department?
A. Mr. Dennery, the situation was not cleared up until the first. The first true reconciliation was made on the September invoice of this year.”
Mr. Hines’ testimony was verified by Mr. Roger Guissinger, the executive administrator for the department who became familiar with the group insurance difficulties, when he was requested so to do by Mr. Gary, and who acted in that capacity while Mr. Alonzo was still comptroller of the department. The three charges on which the commission based their judgment are, therefore, adequately proven.
The contention of the appellant that several of the charges were “stale” at *56 the time of his discharge, or that the particular deficiency had been remedied at the time of his severance is without merit as the record is replete with testimony to the effect that several of these deficiencies were still uncorrected upon his termination. Neither do we find that the commission erred as a matter of law in its determination that there were not legitimate grounds to reduce the dismissal of Alonzo to a demotion, this being a factual question within its province only.
There being sufficient evidence to support the findings of fact by the commission, the judgment must be affirmed as rendered. All costs of this appeal to be paid by the appellant.
Affirmed.