STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-0235


LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT

VERSUS

SHELBY J. FRANCIS AND JOSEPH E. WALKER, III


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 20054492,
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy H. Ezell, Judges.


AFFIRMED.


Michael P. Corry
Alicia M. Jacob
Briney & Foret
Post Office Drawer 51367
Lafayette, LA  70505-1367
(337) 237-4070
COUNSEL FOR PLAINTIFF/APPELLANT:
    Lafayette City-Parish Consolidated Government

Gregory L. Landry
Acadiana Legal Service Corporation
Post Office Box 4823
Lafayette, LA  70502-4823
(337) 237-4320
COUNSEL FOR DEFENDANTS/APPELLEES:
    Shelby J. Francis and Joseph E. Walker, III

PETERS, J.

The Lafayette City-Parish Consolidated Government (LCCG) appeals a judgment of the Fifteenth Judicial District Court affirming a decision of the Lafayette City-Parish Civil Service Board (Board) which reversed the LCCG's decision to terminate the employment of two LCCG employees, Shelby J. Francis and Joseph E. Walker, III. For the following reasons, we affirm the trial court decision in all respects.

## DISCUSSION OF THE RECORD

Most of the facts giving rise to this litigation are not in dispute and were established at a hearing held by the Board in Lafayette, Louisiana, on July 25, 2005. At that hearing, only three members of the five-member Board were present.

The evidence established that Francis and Walker were long-time employees of LCCG, having worked for seventeen and sixteen and one-half years respectively. On May 19, 2005, the two men took scrap aluminum wire from the ground adjacent to a trash dumpster located on LCCG property, loaded it into an LCCG vehicle assigned to Francis, and delivered it to Walker's residence. At the time they took the wire, they were on duty with LCCG and were wearing LCCG uniforms.

This action was reported to LCCG officials, who confronted the two men with accusations of theft of LCCG property on May 23, 2005, at a predetermination hearing. During that hearing, the two men admitted taking the wire. In fact, Francis admitted that the May 19 incident was the fourth time he had taken wire from LCCG and delivered it to Walker's property. The panel which presided at the predetermination hearing recommended that the employment of the two men be terminated. The next day, that recommendation was effected through a letter to the employees, notifying them of their employment termination.

At the July 25, 2005 hearing before the Board, both men acknowledged their involvement in taking the wire and testified that they were aware that LCCG did not deposit the wire at the dumpster as trash but sold the wire to a salvage yard which picked it up from the dumpster. Francis acknowledged his involvement in the other three thefts and contradicted Walker's assertion at the predisposition hearing that he [Walker] had been involved only in the May 19, 2005 theft. Walker acknowledged in his testimony before the Board that he had not been truthful in his prior statements and that he had been involved with Francis on at least one other occasion in taking the wire. Both men expressed remorse for their involvement in the theft activity.

Upon completion of the evidence, one member of the Board moved to have the men disciplined by loss of pay through the date of the hearing and then be reinstated. However, this motion died for lack of a second. The Board then went into executive session. When the members returned from the executive session, a motion was made that LCCG's action in terminating the employment of the two men be upheld. This motion passed by a vote of two to one. The same Board member who had made the motion that had failed for lack of a second voted against the motion. The Board's attorney then made the following comment:

> Mr. Chairman, because of the shortage of members here tonight, the law is that it requires the majority of the Board to take an action affirming a disciplinary action, so two to one vote would not affirm the termination. The vote tonight in order to take any discipline would need to be unanimous because there's only three of you here.

A new motion was then made to suspend the men without pay through August 31, 2005. This motion passed unanimously, and the meeting was adjourned.

LCCG then filed suit against Francis and Walker, seeking to have the Board's decision reversed. In that suit, LCCG asserted that the Board erred in setting aside

its majority decision to uphold the employment termination on the advice of its attorney and in reconsidering the issue.

The matter came before the trial court for hearing on December 12, 2005. After listening to the arguments of counsel, the trial court upheld the action of the Board in oral reasons for judgment. LCCG then perfected this appeal, asserting in its sole assignment of error that the trial court erred when it did not reverse the Board's decision and uphold LCCG's action in terminating the employment of Francis and Walker. However, within that one assignment of error, LCCG raises two arguments:

1.    Because a majority of Board members present initially upheld the dismissal of the two employees by a two-to-one vote, the final unanimous action of the Board should not be considered.

2.    Because LCCG acted with just cause and in a reasonable manner within its rules, procedures and policies in dismissing the two employees, the Board erred in reversing that action, and the trial court erred in affirming the Board's action.

## OPINION

### *Issue Number One*

In seeking reversal of the trial court judgment, LCCG first argues that the two-to-one decision of the Board to uphold LCCG's disciplinary action was a final decision and was changed only because of erroneous legal advice. Thus, it suggests that we simply ignore the unanimous vote to modify the discipline it imposed.

In arguing this point, LCCG directs this court's attention to Section 1.6, Rule II, of the Lafayette City-Parish Civil Service Rules and Regulations (Civil Service Rules), which provides that "[t]hree members of the Board shall constitute a quorum for the transaction of business." At the same time, LCCG acknowledges that the Civil Service Rules do not address the issue concerning the number of votes required for action when only three of the five members attend a Board meeting. Instead,

3

LCCG directs our attention to La.R.S. 33:2536(M) (which appears to provide that the vote of a majority of a quorum present is sufficient to transact business and make decisions in meetings of local fire and police civil service boards created by that statute) and to two judicial opinions upholding majority votes of public entities where the full contingent of members were not present. *See Johnson v. La. State Univ.*, 418 So.2d 667 (La.App. 1 Cir. 1982); *Alonzo v. La. Dep't of Highways*, 268 So.2d 52 (La.App. 1 Cir.), *writ refused*, 263 La. 990, 270 So.2d 124 (1972). Francis and Walker argue on appeal that there is no evidence that the Board has not adopted rules of procedure different from those public entities cited by LCCG. Therefore, there is no evidence that the Board attorney's advice was wrong.

We need not address whether the Board attorney's advice was incorrect. The hearing record reflects that LCCG's attorney was present from the time the Board returned from executive session until it adjourned. During that time, the initial two-to-one motion was acted upon, the Board's attorney commented on the correctness of that vote, the Board members present then discussed the specifics of the suspension that might be imposed, and the Board voted unanimously to effect the suspension through August 31, 2005. LCCG did not object to the advice or to the second vote. Generally, a party's failure to object to a procedural irregularity is considered to constitute a waiver to object to the irregularity on appeal. *Gagliano v. Amax Metals Recovery, Inc.*, 96-1751, 96-1752 (La.App. 4 Cir. 5/7/97), 693 So.2d 889, *writ denied*, 97-1738 (La. 10/13/97), 703 So.2d 619. Thus, LCCG cannot now claim error in that regard.

***Issue Number Two***

4

LCCG argues that, even if this court finds that there was no procedural defect in the voting process that rendered the decision of the Board invalid, we should still reverse the trial court because it acted with just cause; in a reasonable manner; and within its rules, procedures, and policies in terminating the employment of Francis Walker. Thus, LCCG contends that the trial court erred in not reversing the Board's modification of the discipline imposed.

The Lafayette Consolidated Government Policies and Procedures Manual (Policies Manual) establishes the standards of service expected of any LCCG employee. While stealing in general would certainly be an implied condition of any employment relationship, stealing LCCG property is specifically prohibited in Section 261-2.6 of the Policies Manual. Additionally, Section 1.1, Rule IX, Civil Service Rules provides that LCCG has the obligation of maintaining standards of service within the employment relationship and that LCCG "shall take appropriate corrective and progressive actions to maintain standards of service by employees subject to [the civil service] rules." That same section states that, in maintaining standards of service, the actions available to LCCG

> [M]*ay* include:
>
> A.  Termination of employment
> B.  Demotion to a position the subject employee is qualified to perform
> C.  Suspension without pay not to exceed 30 days in a calendar year
> D.  Temporary reduction in pay of 5% not to exceed five (5) pay periods
> E.  Written Reprimand.

*Id.* (emphasis added).

The permissive language in this Section, i.e., the use of the word "may," makes it clear that LCCG is not limited to these rather severe penalties and can pursue a less punitive course of action against the employee or one that is not punitive at all, such

5

as counseling. However, the Civil Service Rules further provide that the reasons for applying any one of these more drastic disciplinary actions include "[c]ommission of an act or acts detrimental to the public interest or to the Classified Service" and "[c]onduct unbecoming of an employee of the classified service that would bring discredit, public embarrassment, or impair the efficient operation of the Lafayette Consolidated Government." Section 2(C) and (P), Rule IX, Civil Service Rules. Certainly, stealing would be encompassed within these reasons.

Section 4.1, Rule II, Civil Service Rules provides that when an employee seeks review of a disciplinary decision by LCCG, the Board's obligation is to "determine whether [LCCG] had just cause and acted in good faith in taking the action." More specifically,

> The policy of the Board with regard to disciplinary appeals shall be as follows:
>
> A. In reviewing disciplinary actions, the Board shall have the duty and authority to determine whether the Appointing Authority acted with just cause and within its rules, procedures, and policies in taking disciplinary action for infractions allegedly committed by an employee, and, if so, whether the discipline imposed is commensurate with the infraction.
>
> B. The Board shall not act to modify or set aside a decision of the Appointing Authority to impose discipline against an employee where the Appointing Authority has acted in a reasonable manner in taking such action, even if the Board feels the Appointing Authority could have or should have pursued a different course of action against such employee.
>
> C. For purposes of this Rule, "just cause" shall be defined as a rational basis for the disciplinary action taken by the Appointing Authority, based upon the information available to the Appointing Authority at the time that such discipline was imposed. Just cause shall be deemed to have been established when the Appointing Authority produces evidence demonstrating the employee's commission of the alleged infractions and demonstrating that the commission of such infractions bears a real and substantial

6

relationship to the efficient operation of the affected department of the Lafayette Consolidated Government.

Section 4.14, Rule II, Civil Service Rules.

As we interpret this policy, the Board must address two issues in its review of LCCG's disciplinary action. The questions of just cause; good faith; and compliance with rules, procedures, and policies relate to the taking of the disciplinary action itself, not the punishment. It is only when the Board determines that the disciplinary action has been taken within these parameters that it should turn to the second issue—whether the discipline imposed was commensurate with the infraction. We find that Section 4.15, Rule II, Civil Service Rules supports this interpretation. That section provides:

A.  In accordance with the policies set forth in Section 4.14 herein above, the Board shall take one of the following actions in rendering decisions on appeals:

1.  Determine that the action of the Appointing Authority was taken for just cause and affirm the action.

2.  Modify the disciplinary action taken by the Appointing Authority and impose a greater or lesser disciplinary action as deemed appropriate under the circumstances.

3.  Set aside the action of the Appointing Authority and order it to restore the employee to all benefits and rights lost as a result of the action.

In this instance, the Board clearly concluded that LCCG acted with just cause; in a reasonable manner; and within its rules, procedures, and policies in instituting disciplinary action against Francis and Walker. However, in reaching the second issue, the Board ultimately concluded that the discipline imposed was not commensurate with the offense charged, although it did not initially reach that conclusion.

7

.	The member of the Board who made the initial motion which died for lack of a second clearly found the punishment to be too severe.  In making his motion, he stated the following:

> [The decision is] cut and clear to me.  First of all, I applaud the City for adopting the zero tolerance policy, but what we need to take into consideration is that zero tolerance is not absolute.  It lends itself to litigation, and in this case, it's very clear that these two gentlemen have been valued employees of the City for 16, 17 years.  This is their first offense.  They stole junk, scrap.  They admitted it, they were remorseful, they apologized.  I think that the termination is too harsh of a punishment for that offense.

In a later dialogue with another member of the Board, he further stated:

> I don't even consider [the employees' activity] theft.  I just consider that a mistake in judgment.  Don't get me wrong, I like zero tolerance, I like the idea that you have it in place and that you pursue it, but it does open itself to litigation, and when there's mitigating circumstances, reconsideration can be given.  In this case, I think reconsideration should be given.

Thus, this member did not find LCCG's action to be unreasonable as a general rule, but found that the discipline imposed in this particular situation was not commensurate with the infraction, given the work history of Francis and Walker, the relatively insignificant value of the property stolen, and their post-incident remorseful attitude.  The other two members obviously initially supported LCCG's decision, but changed their vote after being informed by their legal counsel that the three-member Board had to reach a unanimous decision.  Thus, it appears that they changed their vote for the sole purpose of reaching a compromise decision.  While we might have reached a different conclusion, we do not find that the Board abused its discretion in fulfilling its duty under the Civil Service Rules to determine "whether the discipline imposed [was] commensurate with the infraction."  Section 4.14(A), Rule II, Civil Service Rules.

8

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment upholding the decision of the Lafayette City-Parish Civil Service Board.  We assess all costs of this appeal to the Lafayette City-Parish Consolidated Government to the extent allowed by law.

**AFFIRMED.**