839 So.2d 1176 (2003)
Ronnie LANTIER
v.
LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, et al.
No. 02-1318.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
*1177 Richard D. Chappuis, Jr., Kristen B. Menard, Voorhies & Labbé, Lafayette, LA, for Defendant/Appellee, Lafayette City-Parish Consolidated Government.
M. Candice Hattan, Lafayette, LA, for Defendant/Appellee, Lafayette Municipal Fire & Police Civil Service Board.
Louis L. Robein, Jr., Andrea J. Wilkes, Robein, Urann & Lurye, Metairie, LA, for Plaintiff/Appellant, Ronnie Lantier.
Court composed of JIMMIE C. PETERS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
PETERS, J.
Ronnie Lantier appeals the district court's affirmation of the decision of the Lafayette Municipal Fire and Police Civil Service Board (Board) terminating his employment with the Lafayette City-Parish Consolidated Government. For the following reasons, we reverse the district court's judgment and remand this matter to the Board with instructions.

DISCUSSION OF THE RECORD
Ronnie Lantier served as a fire engineer with the Lafayette City-Parish Consolidated Government Fire Department (Fire Department) for approximately twenty years before his employment termination on June 25, 2001. Lantier's employment termination arose because of events occurring within the Fire Department between Friday, March 31, 2000, and Monday, April 3, 2000. During that period, 141 of the 194 Fire Department suppression personnel walked off the job or called in sick, allegedly in connection with a "sickout" or "blue flu." On Saturday, April 1, 2000, officials of the Fire Department held a televised press conference to inform the public of the situation.
Lantier had worked a twelve-hour shift on Thursday, March 30, 2000, and the next day was his regular day off. He contends that on that Friday he twisted his ankle while coaching his son's baseball team and, because of the injury, called the Fire Department on that evening to inform the appropriate personnel that he would not be able to work the next day, which was his next regularly scheduled duty day.
Lantier was not scheduled to work on Sunday, April 2, 2000. However, on that morning, the Fire Department "alarm room" called Lantier's home. Lantier testified that he recognized the caller as being the alarm room from his telephone "caller ID" and that he did not answer the call because his ankle was still giving him problems and because of his desire to avoid getting "a strike" for refusing to take a call for overtime. Apparently, the Fire Department had a three-strike policy for overtime callsif an employee rejected three calls to work overtime within a fiscal year, he was taken off of the overtime list and was not allowed to work overtime for the remainder of that fiscal year. Lantier had already received one strike for an unrelated matter.
Nevertheless, later on Sunday, Lantier received a call from a different fire station. He testified that he answered this call because he was in the habit of exchanging time with other Fire Department personnel and thought it was a coworker calling to repay the time. However, when Lantier answered the call, he was told that this fire station needed drivers, and he decided to go in to help with the situation.
Thereafter, the alleged sickout spawned an administrative investigation, the results of which revealed that 72.68% of the fire *1178 personnel called in sick, whereas normal absences averaged 1.9% to 3.4% for the six months prior to and the six months after that weekend. Additionally, the investigation revealed that fire personnel called in sick on their regular shifts during the alleged sickout, yet worked overtime on shifts opposite to their own during this time.
After completion of the investigation, Fire Chief Robert P. Benoit terminated Lantier's employment with the Fire Department effective June 25, 2001. The basis of that termination action was that Lantier had violated Lafayette Fire Department Rules and Regulations, Article XI: Dereliction of Duty, Item 17, which provides:
When an emergency has been declared by the Fire Chief, off duty members may be called to work on an overtime basis. It shall be considered the duty of each member, when notified, to respond to emergency help calls and to work until relieved. Off duty members who have been notified to report to an emergency and fail to do so shall state their reasons in writing to their commanding officer. Commanding officers shall forward the written statement through channels to the Fire Chief.
On the same day, Lantier appealed the disciplinary action against him.
On August 14, 2001, the Board held a hearing on the appeal of Lantier's termination from his employment. A divided Board affirmed the disciplinary action taken against Lantier and later rejected his motion for a limited rehearing. On September 14, 2001, Lantier filed a petition for judicial review of the Board's action to the Fifteenth Judicial District Court. The district court affirmed the Board's decision and dismissed Lantier's appeal. Lantier now appeals that judgment.

OPINION
Louisiana Revised Statute 33:2500 provides in part:
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
....
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
Additionally, "[a]ny regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may ... demand ... a hearing and investigation by the board to determine the reasonableness of the action." La.R.S. 33:2501(A). Further, La.R.S. 33:2501(C)(1) provides in part:
After the investigation ... the board may, if the evidence is conclusive, affirm the action of the appointing authority. If they find that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary *1179 action by directing a suspension without pay, for a given period.
Thereafter, the employee and the appointing authority may appeal from the Board's decision to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled. La.R.S. 33:2501(E)(1). However, "[t]his hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." La.R.S. 33:2501(E)(3). In Tweedel v. Fire Protection District # 1 Civil Service Board, 546 So.2d 654, 655 (La.App. 3 Cir.1989), we stated:
"In good faith" has been interpreted to mean the opposite of arbitrary or capricious action or action that stems from prejudice or political expediency on the part of the appointing authority. "Cause" means legal cause and the evidence must show that the dismissal was necessary for the discipline and efficiency of the service or that it was needed to avoid some detriment to that department or to the city.
"Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of public service." Smith v. Mun. Fire & Police Civil Serv. Bd. of Eunice, 94-625, p. 3 (La.App. 3 Cir. 11/2/94), 649 So.2d 566, 568.
In the instant case, the record, reviewed in its entirety, reveals that the district court was clearly wrong in affirming the decision of the Board. Even rejecting as implausible Lantier's injury explanation and activities thereafter, the evidence is equivocal at best concerning whether Chief Benoit actually declared an emergency so as to invoke the disciplinary rule. Chief Benoit testified that he declared an emergency through the April 1 press conference and through the calls by the Fire Department communications division seeking to have the employees report for overtime work. A video tape of the April 1 press conference reveals that, while both the mayor and the fire chief commented on the sickout, they made it clear to the public that the situation was under control with off-duty and volunteer fire fighters covering for the absent employees. In fact, the only person in the video tape using the word "emergency" was the reporter, who stated that he was covering an "emergency meeting." In his testimony, Chief Benoit admitted that he did not actually say that the Fire Department was in a state of emergency but informed the public through the press conference that it was having "some problems."
Additionally, while Lantier admitted that he saw the press conference and thereby discovered that there was a sickout or "blue flu," he testified that he was not aware that anyone had declared an emergency. Further, Patrick Wayne Chauvin, a communications officer with the Fire Department, testified that he was not aware that a state of emergency had been declared during the applicable time period. He also testified that he was never asked to inform firefighters or operators at that time that there was a state of emergency. He recalled that he was asked "to start calling a lot of overtime when the guys were calling in sick," but he testified that the Fire Department was never understaffed and that every truck was manned. Importantly, it is the appointing authority that has the burden of proof. See id.
Even assuming that Chief Benoit had in fact declared an emergency, he admitted that there was "a systematic situation" in which other firefighters were being called to come in but were not answering their phones, which situation he described as *1180 being "pretty widespread." Apparently, these firemen were not disciplined because Chief Benoit could not prove they were at home at the time. Further, Chief Benoit admitted that on the same day that Lantier called in sick, six individuals went home, yet they were not disciplined.
Rather, it appears in this situation that the discipline of Lantier was politically expedient and disparate rather than necessary. In this respect, the most damaging evidence came from Chief Benoit, who testified as follows: "I told Ronnie to save himself.... I told him to name names. I told him, ... `You know for a fact that this was an orchestrated event. All I'm going to tell you is that you're in trouble. Okay? Save yourself. Now, you know what happened. You know what the rumor mill is out there. I can't make you say anything. I'm just telling you as a last effort before I make a decision. You're in trouble. Here's what could happen to you. Save yourself.'" Chief Benoit further testified: "I knew the conspirators of this sickout were not going to get caught. It was going to be the innocent individuals who didn't want to go along with this program that were going to get caught. That's where we are today. Ronnie was an innocent victim of circumstance. I was trying to help him to get him to understand, `Save yourself. Don't let those guys take you down the river, because you have too much to lose.'" (Emphasis added.) Rather than "naming names," Lantier denied any wrongdoing. Regardless of the truthfulness of Lantier's version of the events, the evidence reveals that the appointing authority's action was not in good faith or for cause. It is clear that Lantier was dismissed, not because he violated a disciplinary rule, but because he did not provide the information required by Chief Benoit. Accordingly, the Board and the district court were clearly wrong in affirming Lantier's dismissal. Thus, we reverse and remand to the district court with instructions to remand to the Board for proceedings consistent with this opinion.

DISPOSITION
For the foregoing reasons, we reverse the district court and remand with instructions to remand to the Board for proceedings consistent with this opinion. We assess costs to the Fire Department and Board to the extent allowed by law.
REVERSED AND REMANDED WITH INSTRUCTIONS.