**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-0285

ARTHUR HARRIS

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 20071581
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

J. Lomax Jordan, Jr.
Attorney at Law
Post Office Box 4321
Lafayette, LA 70506
(337) 233-9984
COUNSEL FOR PLAINTIFF/APPELLANT:
    Arthur Harris

George J. Armbruster III
The Panagiotis Firm
1540 West Pinhook Road
Lafayette, LA 70503
(337) 264-1516
COUNSEL FOR DEFENDANT/APPELLEE:
    Lafayette City-Parish Consolidated Government

PETERS, J.

Arthur Harris appeals a trial court judgment affirming a decision of the Lafayette City-Parish Civil Service Board (Civil Service Board) and the Lafayette Consolidated City-Parish Government (City-Parish) to terminate his employment with the utility department of the City-Parish. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The facts giving rise to this litigation were established at a hearing held by the Civil Service Board on March 7, 2007. Prior to January 2, 2007, Mr. Harris had been employed by the City-Parish in its utility department as a water meter technician. On December 31, 2006, he was arrested and incarcerated for an incident not involving his duties with the City-Parish. He did not make bail and, as of January 2, 2007, remained incarcerated in the Lafayette Parish Correctional Center (Correctional Center).

On the morning of January 2, 2007, Mr. Harris telephoned the utility department office from the Correctional Center and asked to speak to his supervisor, Phillip Hector. When he was informed that Mr. Hector was not available, Mr. Harris informed Valerie Scott, a clerk/typist in the utility department, that he would not be coming to work on that day and that he would be seeking medical care at the Veterans' Administration Hospital.[1] However, he made no mention of his current incarceration. Ms. Scott reported this conversation to Mr. Hector and Tracy Mouton, another supervisor in the utility department.

Prior to her conversation with Ms. Scott, Ms. Mouton had become aware of Mr. Harris's arrest. After being told of the content of Ms. Scott's conversation with Mr.

---

[1]Ms. Scott testified that Mr. Harris stated to her that "he wouldn't be in, plus, he had to go to the V. A. Hospital."

Harris, Ms. Mouton checked the Correctional Center records. In doing so, she found out that Mr. Harris remained incarcerated as of the morning of January 2, and that he had not received any medical treatment since his incarceration.

Based on this information, Terry Huval, the utility department director, made the decision to terminate Mr. Harris's employment relationship with the City-Parish. The decision resulted in the generation of a termination letter; the content of which had already been recommended by the City-Parish's Human Resources Department before Mr. Huval came to his decision. However, before the letter could be transmitted to him, Mr. Harris contacted Mr. Hector and informed him that he was ready to come back to work. This conversation occurred on the evening of January 4. Instead of informing Mr. Harris of Mr. Huval's action, Mr. Hector told Mr. Harris to report to his office the next morning. At that time, Mr. Hector and Ms. Mouton met with Mr. Harris and gave him the letter from Mr. Huval. That letter, which is dated January 3, 2007, reads as follows:

> Public Records indicated that you were arrested on December 31, 2006, as a result of your off-duty conduct. You called in to report that you would be absent from work on January 2, 2007, for an appointment with the Veteran's Administration clinic. The Lafayette Parish Sheriff's office was contacted, and information obtained indicated that you remained incarcerated at the Lafayette Parish Correctional Center as of January 02, 2007. Further information obtained indicated that as of 12:00noon, you had not received any medical attention. Thus, it is apparent that you were untruthful when calling in to report the reason for your absence on January 02, 2007.
>
> As Lafayette Consolidated Government is a governmental entity, our purpose is to provide services to the residents and business community of the City-Parish of Lafayette, Louisiana. Your recent actions have portrayed a negative image of Lafayette Consolidated Government and our employees.
>
> All available paid annual leave (4-hours) were exhausted, as of 12:00noon, on January 02, 2007. In order to uphold the accountability and integrity of the Utilities Department, it has been determined that the

2

best interest of the Lafayette Consolidated Government and the Utilities Department would be served by not authorizing a Leave of Absence Without Pay. Therefore, *you are hereby notified that your employment was terminated effective, as of 12:00 noon, on January 02, 2007.*

As you are aware, the Rules and Regulations of the Lafayette City-Parish Civil Service provide you a right to appeal this disciplinary action. If you wish to appeal, you must submit a written request for an appeal hearing before the Civil Service Board within fifteen (15) days from the date you receive this letter.

Mr. Harris appealed his termination to the Civil Service Board.

At the March 7, 2007 Civil Service Board hearing, Ms. Mouton explained that the utility department policy required that an employee speak to a supervisor when requesting leave, and that leaving a message was not sufficient to satisfy the employee's obligation in that regard. She further explained that assuming the employee complied with department policy, and assuming he had accumulated sick or annual leave, the request would be granted. However, when an employee was requesting leave without pay, the supervisor would need to know the basis for the request before granting such a request. The distinction between requesting to use accumulated leave and leave without pay was significant in the case of Mr. Harris because, as of January 2, 2007, he had only four hours of annual leave time remaining. Had a supervisor granted Mr. Harris's request without seeking an explanation, the employee's available time would have been exhausted as of noon on January 2, 2007. Thus, according to Ms. Mouton, the reason for the termination was not the request itself, but because "he provided untruthful information in regards to why he could not be at work that day, and he had exhausted all his leave and was not granted a leave without pay extension."

Mr. Huval testified that his decision to terminate Mr. Harris's employment was based on Mr. Harris's failure to follow procedure as well as the untruthful

information he provided to Ms. Scott. He also was aware of the news reports concerning Mr. Harris's arrest, but the fact that he had been arrested played no part in his decision. Ray Domingue, the Human Resources Manager for the City-Parish, supported Mr. Huval's decision and suggested in his testimony that the following circumstances justified termination of Mr. Harris's employment:

> [O]ne is he had four hours of annual leave available to him. He was afforded those four hours of annual leave at that point. The decision could be made by the Appointing Authority as to whether or not to grant leave without pay. Based on information that had been received that he had called to indicate he had a medical appointment that was, in fact, not the case, and because of the fact that he had misrepresented why he had requested leave, that was grounds, just cause for termination. And there was prior history of him also having also falsified some information to a supervisor prior to this particular incident.

Three people testified for Mr. Harris at the Civil Service Board hearing: Leon Patrick Elaire, Craig Joseph Sam, and Gloria LeBlanc Wheeler. Mr. Elaire, a fellow employee, testified that on December 28, 2006, he heard Mr. Harris discuss his need to go to the Veterans' Administration hospital for medical treatment, and that during that discussion, Mr. Harris stated that he did not intend to come back to work on January 2 because of his medical problems. Mr. Sam, also a fellow employee, testified that he heard Mr. Harris state that he would be taking thirty days off after the holidays and would be going to the Veterans' Administration Hospital for stress. Ms. Wheeler is a deputy court administrator with the Lafayette City Court. She testified that she spoke to Mr. Harris on either December 31 or January 1, while he was incarcerated, and that he told her he was going to seek mental health treatment at the Veterans' Administration Hospital.

In addition to the testimony of the witnesses, the litigants provided the Civil Service Board with a number of exhibits, including copies of Mr. Harris's work

4

history.  After considering the evidence presented, the Civil Service Board

unanimously voted to confirm the City-Parish's action in firing Mr. Harris.  The trial

court rejected Mr. Harris's appeal to it, and he has appealed to this court.  In this

appeal, Mr. Harris asserts four assignments of error:

I.      The trial court misapplied the "Clearly Erroneous/Manifest Error" Standard in reviewing the evidence presented to the Lafayette City-Parish Civil Service Board.

II.     The trial court incorrectly determined that the appointing authority, the Lafayette City-Parish Consolidated Government, sustained its burden of proof on all of the required legal elements as a matter of law.

III.    The trial court incorrectly determined that the Lafayette City-Parish Civil Service Board could, as a matter of law, affirm the termination of the appellant employee on grounds other than those specifically set forth in the termination notice.

IV.    The trial court incorrectly determined that the Lafayette City-Parish Civil Service Board could, as a matter of law, affirm the termination of the appellant employee on grounds not enumerated in the in the [sic] appointing authority's policy setting forth the ground for discipline of an employee.

**OPINION**

*Assignment of Error Numbers One and Two*

This court, as well as the trial court, reviews the Civil Service Board's decision

pursuant to Section 4.16(F), Rule IX, Lafayette City-Parish Civil Service Rules and

Regulations.  That rule provides:

> The Court's ruling on appeal shall be limited to a determination of whether the Board's ruling was in error in light of the documents, testimony, and other evidence presented and considered by the Board. The Board's findings shall not be overturned on appeal unless deemed by the Court to be manifestly erroneous and/or contrary to law.

5

In his first assignment of error, Mr. Harris only argues that the Civil Service Board's decision is manifestly erroneous.[2] Specifically, he asserts that, although the trial court correctly stated the standard of review, it erred in not finding that the Civil Service Board's decision was manifestly erroneous. In his second assignment of error, Mr. Harris asserts that the trial court erred as a matter of law in concluding that the City-Parish carried its burden of proof on the required elements. We will consider both assignments together.

In reviewing Mr. Harris's termination, the Civil Service Board was governed by Section 4:14(A), Rule IX, Lafayette City-Parish Civil Service Rules and Regulations, which provides:

> The policy of the Board with regard to disciplinary appeals shall be as follows:
>
> A. In reviewing disciplinary actions, the Board shall have the duty and authority to determine whether the Appointing Authority acted with just cause and within its rules, procedures, and policies in taking disciplinary action for infractions allegedly committed by an employee, and, if so, whether the discipline imposed is commensurate with the infraction.
>
> B. The Board shall not act to modify or set aside a decision of the Appointing Authority to impose discipline against an employee where the Appointing Authority has acted in a reasonable manner in taking such action, even if the Board feels the Appointing Authority could have or should have pursued a different course of action against such employee.

---

[2]Both parties suggest that in reviewing the Civil Service Board's decision, the trial court and this court must determine if the Civil Service Board acted in good faith and for cause, citing to cases such as *Cherry v. Monroe Municipal Fire and Police Civil Service Board*, 514 So.2d 738 (La.App. 2 Cir. 1987), *Tweedel v. Fire Protection District #1 Civil Service Board*, 546 So.2d 654 (La.App. 3 Cir. 1989), and *Lantier v. Lafayette City*, 839 So.2d 1176 (La.App. 3 Cir. 2003). But all the cases cited involve employees of fire or police departments in municipalities with populations between 13,000 and 125,000, and therefore in those cases the courts' actions were governed by La.R.S. 33:2501(E)(3), which provides that when the employee appeals the Civil Service Board's decision to a court, "[t]his hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part." Here, Mr. Harris was not an employee of a police or fire department, so La.R.S. 33:2501 and the cases interpreting it do not apply.

6

C. For purposes of this Rule, "just cause" shall be defined as a rational basis for the disciplinary action taken by the Appointing Authority, based upon the information available to the Appointing Authority at the time that such discipline was imposed. Just cause shall be deemed to have been established when the Appointing Authority produces evidence demonstrating the employee's commission of the alleged infractions and demonstrating that the commission of such infractions bears a real and substantial relationship to the efficient operation of the affected department of the Lafayette Consolidated Government.

Thus, the City-Parish had the burden of showing that it acted with just cause; that it was in compliance with the Civil Service Board rules, procedures, and policies; and that the discipline imposed was commensurate with the infraction. *See Lafayette City-Parish Consol. Gov't v. Francis*, 06-235 (La.App. 3 Cir. 6/28/06), 934 So.2d 258.

In its findings of fact, the Civil Service Board accepted as true the allegations of the City-Parish concerning Mr. Harris's incarceration, his failure to follow procedure in requesting leave from his employment, and his false statements to Ms. Scott. Additionally, the Civil Service Board concluded that the City-Parish "was within its right to terminate Mr. Harris's employment because of his lack of leave regardless of the truth or falsity of the statements he made on the telephone to Valerie Scott on January 2, 2007."

Mr. Harris's primary argument on appeal is that the City-Parish did not establish that he was untruthful when he told Ms. Scott that he would not be coming to work and that he was going to the Veterans' Administration Hospital for treatment. In making this argument, he does not deny that he made the statements, but suggests that his failure to come to work and his attempt to obtain medical treatment were unrelated. That is to say, his statement concerning seeking medical treatment was a

7

statement of future intentions, not an explanation for his absence that particular day.[3] As obviously did the Civil Service Board and the trial court, we disagree with this interpretation of the conversation with Ms. Scott, as it strains rationality to argue that the two statements were unrelated given the background in which they were uttered. The Civil Service Board concluded that the medical treatment statement was meant to be an explanation of, and a justification for, his failure to come to work. As such, the statement was untrue, and the immediate or direct reason Mr. Harris did not come to work was because he was incarcerated.

Next, Mr. Harris argues that the discipline imposed was not commensurate with the infractions, and that the City-Parish should have imposed one of the other sanctions available— demotion, suspension without pay, temporary reduction in pay, or written reprimand. This argument would be better suited to Mr. Harris were he a first offender, and that is not the case. The City-Parish introduced evidence of a 1996 letter of reprimand to Mr. Harris referencing allegations of untruthfulness on his part, as well as a memorandum from April of 1998 requiring Mr. Harris to provide a doctor's certificate for each day of absence due to the excessive amount of sick leave he had used in 1997 and 1998.

We find no manifest error in the Civil Service Board's factual conclusions, nor do we find that the Civil Service Board erred as a matter of law in concluding that the City-Parish had carried its burden of proof on the elements of proof. Additionally, given Mr. Harris's employment history as well as the severity of the current

---

[3]Mr. Harris argues that the real issue is whether he had in fact *intended* to go to the Veterans' Administration Hospital. To prove that his statement that he intended to seek medical help was factual, Mr. Harris introduced the testimony of two fellow employees and a friend, Gloria Wheeler, who all confirmed that prior to January 2 Mr. Harris had stated his intent to seek medical help at the Veterans' Administration Hospital.

8

infractions, we find no abuse of discretion in the punishment imposed. That being the case, we find no merit in Mr. Harris's first two assignments of error.

### *Assignment of Error Number Three*

In this assignment of error, Mr. Harris argues that the Civil Service Board affirmed his termination "on grounds other than those specifically set forth in the termination notice." He asserts that the Civil Service Board affirmed the employment termination because he had failed to follow proper procedure in applying for additional leave time, a reason not listed in the termination letter. We find no merit in this assignment of error.

The termination letter, which we have quoted in full previously in this opinion, references Mr. Harris's "recent actions" in being "untruthful when calling in to report the reason for [his] absence on January 02, 2007" as the reason for the City-Parish's action in terminating his employment. The City-Parish then credited Mr. Harris's remaining four hours of annual leave to him and terminated his employment as of noon on January 2, 2007. In its findings of fact, the Civil Service Board accepted as fact all of the assertions of the January 3, 2007 correspondence informing Mr. Harris of the City-Parish's action in terminating his employment. We interpret the comment by the Civil Service Board that the City-Parish would have had just cause to terminate Mr. Harris's employment because of his lack of available leave time "regardless of the truth or falsity of the statements he made" to Ms. Scott as dicta.

### *Assignment of Error Number Four*

Finally, Mr. Harris asserts that the City-Parish terminated his employment on grounds not enumerated in the Civil Service Rules. Specifically, he contends that none of the reasons on which the Civil Service Board may have based its decision—

his arrest, his failure to follow proper procedures for requesting additional unpaid leave, his exhaustion of leave while absent from work, or his untruthfulness—constitute grounds for discipline under the Civil Service Rules. We disagree.

Section 2, Rule IX, Civil Service Rules provides the non-exclusive rules for discipline and include:

A. Unwillingness or failure to perform the assigned duties in a satisfactory manner;

B. Deliberate omission of an act that it was his duty to perform;

* * *

D. Insubordination.

* * *

P. Conduct unbecoming of an employee of Classified Service that would bring discredit, public embarrassment, or impair the efficient operation of the Lafayette Consolidated Government; and

Q. Any actor or failure to act that Board accepts as sufficient to show the offender is unfit or unsuitable for employment in the Classified Service.

We find that Mr. Harris's untruthfulness could be construed as falling within any or all of these categories. Therefore, we find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment upholding the decision of the Lafayette City-Parish Civil Service Board and the Lafayette Consolidated City-Parish Government terminating Arthur Harris's employment with the Lafayette Consolidated City-Parish Government. We assess all costs of this appeal to Arthur Harris.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.